

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

*[signature]*

**United States Bankruptcy Judge**

**Signed February 10, 2012**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| AMERICAN HOUSING FOUNDATION, | § | Case No. 09-20232-RLJ-11 |
| | § | |
| | § | |
| Debtor. | § | |

## OMNIBUS MEMORANDUM OPINION

The Court addresses 37 motions filed in 20 lawsuits by 96 defendants, all of which seek

dismissal of bankruptcy-based causes of action upon the authority of the Supreme Court's opinion

in *Stern v. Marshall*, 564 U.S. ___, 131 S. Ct. 2594 (2011) ("*Stern*").[1] The motions assert other

grounds for dismissal; this memorandum opinion addresses only the *Stern*-based grounds for

dismissal. The suits include fraudulent transfer actions based both on substantive federal law (§

548 of the Bankruptcy Code) and substantive state law (through § 544 of the Bankruptcy Code)

and preference actions (§ 547 of the Bankruptcy Code). Many, if not all, of the defendants are *not*

---

[1]This Omnibus Memorandum Opinion is entered in the American Housing Foundation bankruptcy case and the twenty lawsuits (or, per bankruptcy parlance, "adversary proceedings"), which suits are identified by adversary number on Addendum A attached to this Omnibus Memorandum Opinion.

claims-filing creditors in the American Housing Foundation ("AHF") bankruptcy case [Case No. 09-20232], the case under which these suits arise; they do *not* consent to this Court hearing these actions. The plaintiff, Walter O'Cheskey (the "plaintiff-trustee"), is a trustee of a liquidating trust and to whom was assigned, under the confirmed plan of AHF, the rights of a bankruptcy trustee. As such, and in light of *Stern*, the Court acknowledges that these actions test the outer boundaries of the bankruptcy system. It concludes, however, that *Stern* does not require dismissal of the fraudulent transfer and preference claims brought in this Court by the plaintiff-trustee as a representative of the bankruptcy estate.

## I.

The defendants seek dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure, as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure. Before addressing the defendants' specific arguments, the Court first reviews what the Supreme Court said in *Stern*.[2]

## A.

The Supreme Court in *Stern* addressed whether it was proper for the bankruptcy court there to have entered a final judgment on a common law tort claim. The Supreme Court held that while the bankruptcy court had statutory authority to enter the final judgment, it lacked constitutional authority to do so.

Vickie filed a Chapter 11 bankruptcy case in California. In Vickie's bankruptcy case, Pierce sued Vickie for defamation and asserted that his resulting claim was nondischargeable

---

[2]The Court assumes all counsel are well versed in *Stern* and will therefore bypass the colorful and complicated background that gave rise to *Stern*. As Chief Justice Roberts did in the majority opinion, the Court will refer to the principal parties simply as "Vickie" and "Pierce."

under § 523 of the Bankruptcy Code. Pierce also filed a proof of claim in the bankruptcy case.
Pierce's suit created an adversary proceeding, in which Vickie filed a counterclaim for tortious
interference against Pierce. Her counterclaim was similar to an action she had previously brought
against Pierce in Texas probate court on a fraudulent inducement theory, which was pending at
the time of her bankruptcy. The bankruptcy court first entered summary judgment for Vickie on
Pierce's defamation claim. Later, upon trial on Vickie's counterclaim for tortious interference, the
bankruptcy court found in Vickie's favor and entered a judgment for her in an amount in excess of
$400 million.

      As noted by the Supreme Court, Pierce, in post-trial proceedings, *renewed* his claim that
the bankruptcy court's authority over Vickie's counterclaim was limited because it was not a
"core" proceeding under 28 U.S.C. § 157(b)(2)(C). The bankruptcy court disagreed, concluding
that Vickie's counterclaim was clearly a core proceeding under the statute and that it thus had
authority to enter a final judgment. On appeal, the district court disagreed. The district court
determined that though Vickie's counterclaim fell within the literal language of the statute
designating certain matters as "core," it was really only "somewhat related" to the bankruptcy
case and thus outside the normal type of setoff counterclaims that customarily arise in bankruptcy
suits. The district court recognized the constitutional problem with treating Vickie's counterclaim
as a core proceeding, given the Supreme Court's opinion in *Northern Pipeline Constr. Co. v.
Marathon Pipe Line Co.*, 458 U.S. 50, 102 S. Ct. 2858 (1982). It therefore treated the
bankruptcy court's judgment as "proposed" and performed an independent review of the action.
Upon doing so, the district court still found for Vickie on her tortious interference claim but
reduced the judgment to approximately $90 million. Of significance, prior to the district court's

entry of its judgment, the pending action in the Texas probate court proceeded to a jury trial, resulting in a judgment for Pierce. In entering its judgment, the district court did not recognize the prior Texas probate court judgment.

Upon appeal to the Ninth Circuit Federal Court of Appeals, the Ninth Circuit determined that the district court had erred in not giving preclusive effect to the prior-in-time judgment of the Texas probate court. It therefore reversed the district court. The Ninth Circuit construed the statute, § 157, to provide that a bankruptcy court may enter a final judgment in a proceeding only if the matter satisfies the statute's definition of a core proceeding *and* arises under or arises in a title 11 case (a bankruptcy case). As such, allowing final judgments by bankruptcy courts on *all* counterclaims in bankruptcy would run afoul of the Supreme Court's decision in *Northern Pipeline*. The Ninth Circuit further refined its ruling to provide that a counterclaim is properly a core proceeding arising in or under the Code *if* its resolution is necessary to resolve the allowance or disallowance of the claim which it counters. Vickie's counterclaim did not satisfy the Ninth Circuit's standard; the bankruptcy court's judgment could not, therefore, constitute a valid final judgment, and the district court's judgment was thus the first validly issued final judgment by a federal court. The problem, of course, was that it came after the Texas probate court judgment.

B.

1.

The Supreme Court, at Part II-A of the opinion, began its analysis by generally outlining the bankruptcy system: how the district courts, under 28 U.S.C. § 1334(a), have jurisdiction over all bankruptcy matters—bankruptcy cases and bankruptcy proceedings that arise under, arise in, or are related to a bankruptcy case; how the district courts, under 28 U.S.C. § 157(a), may refer

all such cases and proceedings to the bankruptcy judges; and how the district courts, under 28 U.S.C. § 157(d), may withdraw a referred case or proceeding. The Supreme Court noted that bankruptcy judges are appointed by the courts of appeals for fourteen-year terms.

Chief Justice Roberts, writing for the majority, then described how bankruptcy judges handle the referred matters that come before them. The bankruptcy judge may hear and enter final judgments on all "core proceedings," which, of relevance in *Stern*, include counterclaims by the bankruptcy estate against persons filing proofs of claim in the bankruptcy case. Such final judgments are appealable to the district courts where they are subject to the same review standard as are appeals from the district courts to the federal appellate courts. If a proceeding is not core and, instead, is merely an action "related to" the bankruptcy case, the bankruptcy judge may only submit proposed findings of fact and conclusions of law to the district court; the district court then enters a final judgment after a *de novo* review of any matter to which a party objects.[3]

2.

Vickie's counterclaim for tortious interference highlighted an ambiguity in the statute, which the Supreme Court in *Stern* next addressed under subpart B of Part II of the opinion. The statute states as follows: "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). Pierce had argued that a bankruptcy judge could enter a final judgment on a core proceeding only if it also arose in or under the Code. Vickie's counterclaim, as a state-law based

---

[3]The Supreme Court did *not*, at Part II-A, describe the consent mechanism that creates an exception to the general rule that bankruptcy judges may only enter proposed findings of fact and conclusions of law in related-to matters. Section 157(c)(2) of title 28 provides that "the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge *to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title*." 28 U.S.C. § 157(c)(2) (emphasis added). A related-to proceeding is thus handled just like a core proceeding, *if the parties so consent*.

suit, was arguably not one that arose in or under a title 11 case but, postured as a counterclaim against a claim-filing creditor, was included within the list of matters that are core proceedings pursuant to the statute. *See* 28 U.S.C. § 157(b)(2)(C). The question from the statute, therefore, was whether there are proceedings that are "core" but do not arise under or in the bankruptcy case, i.e., proceedings that are both "core" and "related to." The Supreme Court construed the statute to provide that the phrases "arising in" and "arising under" further define "core proceedings." As a result, core proceedings are the "arising" matters, and they do not include matters that are merely "related to" the bankruptcy case. "We think that a contradiction in terms. It does not make sense to describe a 'core' bankruptcy proceeding as merely 'related to' the bankruptcy case; oxymoron is not a typical feature of congressional drafting." *Stern*, 131 S. Ct. at 2605 (citations omitted). Bankruptcy proceedings thus breakdown as follows: core (arising in or under) proceedings and non-core (related to) proceedings. To further highlight this distinction, the Supreme Court mentioned that it had previously, in *Northern Pipeline*, distinguished "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, . . . from the adjudication of state-created private rights." *Id.*

The fundamental problem with the statute, given the facts in *Stern*, was then identified by the Supreme Court: the designation of *all* counterclaims as "core" proceedings raises "serious constitutional concerns." *Id.* Such constitutional problem could not be avoided without rewriting the statute. *Id.* The stage was thus set to tackle the constitutional issue. Before doing so, however, the Supreme Court took a necessary detour by first addressing, in subpart C of the opinion, Pierce's argument, as an alternative to the constitutional question, that the bankruptcy court lacked jurisdiction to enter a final judgment on *his* claim, the defamation action. This

argument was based on § 157(b)(5) of the statute, which provides that personal injury tort and wrongful death claims must be tried in the district court.[4] The Supreme Court rejected Pierce's argument, finding that he had clearly consented to the bankruptcy court's resolution of his defamation claim. Upon review of § 157, and specifically § 157(b)(5), the Supreme Court determined that § 157(b)(5) does not raise a jurisdictional issue, thus Pierce could not later raise the issue given his prior consent. It was noted that § 157 (*all of § 157*) simply allocates the authority to enter final judgments as between the bankruptcy court and the district court. "That allocation does not implicate questions of subject matter jurisdiction." *Id.* at 2607. To emphasize that Pierce had consented to the bankruptcy court's determination of his defamation claim and thus waived his right to have it decided by the district court, the Supreme Court referenced the consent mechanism at § 157(c)(2);[5] it also stated that "'[n]o procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited . . . by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'" *Stern*, 131 S. Ct. at 2608 (citing *United States v. Olano*, 507 U.S. 725, 731 (1993), quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)).

C.

1.

Having thus set the stage, the Supreme Court, at Part III of the opinion, launched into the heart of its analysis. First, its basic conclusion: "[a]lthough we conclude that §157(b)(2)(C)

---

[4]Presumably if Pierce's defamation claim had to be tried in the district court, then Vickie's counterclaim had to as well.

[5]*See supra* note 3.

permits the bankruptcy court to enter final judgment on Vickie's counterclaim, Article III of the

Constitution does not." *Stern*, 131 S. Ct. at 2608. At Part A, the Supreme Court provided a

primer on Article III of the Constitution: that federal judicial power is exclusively vested in Article

III judges; that certain attributes granted such judges thereby make them Article III judges—life

tenure and no reduction in pay; that such arrangement protects and ensures the independence of

the judiciary; that, within the separation of powers, judicial power cannot be shared with either

the legislative or executive branch; and, most important in light of the issue before it, that

Congress cannot confer federal judicial power on entities outside the judicial branch.

> When a suit is made of "the stuff of the traditional actions at common law . . . and is
> brought within the bounds of federal jurisdiction, the responsibility for deciding that
> suit rests with Article III judges in Article III courts. The Constitution assigns that
> job—resolution of "the mundane as well as the glamorous, matters of common law
> and statute as well as constitutional law, issues of fact as well as issues of law"—to
> the Judiciary.

*Id*. at 2609 (citing *Northern Pipeline*, 458 U.S. at 86-87 n.39) (internal citations omitted).

2.

As the next step in its analysis, at subpart B, the Supreme Court discussed its prior

decision in *Northern Pipeline* because there, as in *Stern*, it had addressed an Article III challenge

to a bankruptcy court's "resolution of a debtor's suit." *Id*. A plurality of the Supreme Court in

*Northern Pipeline* held that the assignment of state-law contract claims to the bankruptcy judges

violated Article III of the Constitution. Chief Justice Roberts noted *Northern Pipeline*'s

discussion of the possible exceptions to the constitutionally based principle of the separation of

powers among the three branches and, in particular, the delegation of judicial power to the judicial

branch. He explained that *Northern Pipeline* addressed the "public rights" exception under which

Congress may constitutionally assign to "legislative courts" matters between individuals and the Government in connection with the performance of the constitutional functions of the executive or legislative branches that historically could have been determined exclusively by those branches. *Id*. at 2610 (citing *Northern Pipeline*, 458 U.S. at 67-68). The majority of the Supreme Court in *Northern Pipeline* held that the public rights doctrine did not encompass the adjudication of state-law claims. *Id.* (citing *Northern Pipeline*, 458 U.S. at 69-72). Vickie's state-law based claim raised the same constitutional concern.

D.

At subpart C of Part III, in response to the arguments of Vickie and the dissent, Chief Justice Roberts delved deeper into the issue. He addressed three points.

1.

*First*, he reiterated that Vickie's counterclaim did not fall within any of the "various formulations" of the public rights exception as expressed in the Supreme Court's prior opinions. *Id*. at 2611. He then discussed a few of the formulations. From the 1856 case of *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856), he posited that "Congress may set the terms of adjudicating a suit when the suit could not otherwise proceed at all." *Id*. at 2612. The dispute there fell within the public rights doctrine because the action was by the Treasury (the executive branch) concerning a dispute over land, and the federal government had to waive sovereign immunity. In *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833 (1986), it was emphasized that the claim and the counterclaim before the Commodity Futures Trading Commission were "competing claims to the same amount." *Id*. at 2614.

It is at this part of the opinion that the Supreme Court then addressed *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), where the Supreme Court rejected the argument that a fraudulent transfer claim by a bankruptcy trustee against a non-creditor fell within the public rights exception. Chief Justice Roberts said that in *Granfinanciera*, "[w]e reasoned that fraudulent conveyance suits were 'quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.'" *Stern*, 131 S. Ct. at 2614.

The Supreme Court concluded that Vickie's counterclaim, like the fraudulent conveyance action at issue in *Granfinanciera*, did not fall within the varied formulations of the public rights exception. *Id.* It was not a claim created by the grace of the other branches of government (as in *Murray's Lessee*); it was not one that historically could have been determined exclusively by those branches; and it neither derived from nor was its resolution dependent upon a federal regulatory scheme. It was simply a claim under state common law between two private parties that was not dependent in any way on the will of Congress. *Id.* Finally, the Supreme Court emphasized that Pierce did not, by filing a proof of claim in Vickie's bankruptcy, truly consent to a resolution of Vickie's counterclaim in the bankruptcy court. *Id.* at 2614-15. As a practical matter, he had nowhere else to go if he wished to recover from Vickie. *Id.* In summary, the claims in *Stern* were, the Supreme Court noted, very different from cases involving a federally created agency in which Congress has established a more efficient method, with appointed experts, to deal with issues arising under a regulatory scheme. *Id.* at 2615. Adjudication of Vickie's counterclaim, in contrast, required the most basic exercise of judicial power.

- 10 -

2.

*Second*, Chief Justice Roberts discussed whether *Northern Pipeline* and *Granfinanciera* were distinguishable because Pierce, unlike the defendants in those cases, had filed a proof of claim.[6] The Supreme Court determined they were not distinguishable. It noted that Pierce's decision to file a proof of claim had no bearing on the characterization of Vickie's counterclaim; the defamation claim did not affect the nature of Vickie's counterclaim for tortious interference as one brought to augment the bankruptcy estate, the very type of claim that *Northern Pipeline* and *Granfinanciera* held must be decided by an Article III court. *Id*. at 2615-16. The Supreme Court next discussed its prior decisions in *Katchen v. Landy*, 382 U.S. 323 (1966), and *Langencamp v. Culp*, 498 U.S. 42 (1990), both of which essentially held that a preference claim could be heard in the bankruptcy court where the allegedly favored creditor had filed a claim which itself would be resolved, at least in part, by a determination of the preference claim, and thus was "integral to the restructuring of the debtor-creditor relationship." *Stern*, 131 S. Ct. at 2617. As for Vickie's counterclaim, the bankruptcy judge had made several factual and legal determinations that were not disposed of in passing on objections to Pierce's claim for defamation. *Id*. While there was some overlap between Vickie's counterclaim and Pierce's defamation claim, making the counterclaim compulsory, there was no reason to believe that the process of adjudicating Pierce's claim would necessarily resolve Vickie's counterclaim. *Id*. Finally, the Supreme Court pointed out

---

[6]To be clear, the ramifications of Pierce having filed a proof of claim was thus considered in two ways: first, on the question of whether he had, by doing so, consented to adjudication of Vickie's counterclaim before the bankruptcy judge; and, second, whether it (the filing of the claim) distinguished the facts and circumstances of *Stern* from *Northern Pipeline* and *Granfinanciera*, in both of which the defendants were *not* claims-filing creditors.

that the trustees in both *Katchen* and *Langencamp* were asserting a right of recovery specifically

created by federal bankruptcy law. *Id*. at 2618. The Supreme Court stated as follows:

> We see no reason to treat Vickie's counterclaim any differently from the fraudulent
> conveyance action in *Granfinanciera*. . . . *Granfinanciera*'s distinction between
> actions that seek "to augment the bankruptcy estate" and those that seek "a pro rata
> share of the bankruptcy res," . . . reaffirms that Congress may not bypass Article III
> simply because a proceeding may have *some* bearing on a bankruptcy case; the
> question is whether the action at issue stems from the bankruptcy itself or would
> necessarily be resolved in the claims allowance process.

*Id*. (internal citations omitted). The Supreme Court therefore concluded that Vickie's

counterclaim did not fall within one of the limited circumstances covered by the public rights

exception, especially given the presumption in favor of Article III courts. *Id*.

3.

*Third*, Chief Justice Roberts addressed the argument that the bankruptcy court's judgment

was constitutional because bankruptcy courts under the 1984 Act are "adjuncts" of the district

courts, an argument similar to one made and rejected by the Court in *Northern Pipeline*. *Id*. The

Supreme Court flatly rejected this argument, stating that, at least given the power of a bankruptcy

court to enter final judgments in core proceedings, the bankruptcy court is no more an adjunct of

the district courts than a district court can be deemed an adjunct of the courts of appeals. *Id*. at

2618-19. The constitutional defect is not cured by the fact that bankruptcy judges are appointed

by Article III courts rather than the President. Periodical appointments, "however regulated," or

by "whomsoever made," are fatal to a judge's necessary independence. *Id*. at 2619.

E.

In the final section of the majority opinion, subpart D, Chief Justice Roberts refuted the

argument that restrictions on the bankruptcy court's ability to hear and decide compulsory

- 12 -

counterclaims will cause delays to and increase the cost of bankruptcy litigation. He then goes to some lengths to downplay the significance of the opinion and the effect it will have on the bankruptcy system. With respect to the potential inefficiencies created by its decision, the Supreme Court said that such issues cannot save a law that clearly runs afoul of the Constitution. It pointed to the abstention provisions under section 1334(c) of title 28 as part of the present framework which already provides that certain state law matters that arise in bankruptcy cases are resolved by judges other than bankruptcy judges. *Id.* at 2619-20. The Supreme Court emphasized that it was not addressing whether bankruptcy courts are barred from *hearing* all counterclaims or proposing findings of fact and conclusions of law on such matters; rather, it was deciding that it must be the district court that finally decides them. "We do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree with the United States that the question presented here is a 'narrow' one." *Id*. at 2620. The Supreme Court held as follows:

> Article III of the Constitution provides that the judicial power of the United States may be vested only in courts whose judges enjoy the protections set forth in that Article. We conclude today that Congress, in one isolated respect, exceeded that limitation in the Bankruptcy Act of 1984. The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim.

*Id*. The Supreme Court therefore affirmed the judgment of the Ninth Circuit Court of Appeals.

II.

A.

The defendants seek dismissal under the procedural umbrella of Rule 12(b)(1) of the Federal Rules of Civil Procedure, which rule permits a defensive motion based on "lack of

- 13 -

subject-matter jurisdiction." *See, e.g.*, Greystone Servicing Corporation, Inc.'s Motion to Dismiss, Adv. No. 11-02014, Docket No. 6. As a threshold matter, the Court submits that describing the "*Stern* problem" as raising an issue of subject matter jurisdiction is misguided. As explained by the Supreme Court in *Stern*, subject matter jurisdiction over *all* bankruptcy cases and proceedings is, under the statute, conferred on the district courts. *See Stern*, 131 S. Ct. at 2603; *see also* 28 U.S.C. § 1334(a) and (b). That bankruptcy judges may *hear and determine* all bankruptcy cases and certain "core" proceedings and merely *hear* other proceedings results from the referral of cases and proceedings from the district court to the bankruptcy judges and the nature of the responsibilities conferred on bankruptcy judges (i.e., the division of labor) under the statute. *See* 28 U.S.C. § 157(a)-(d). The defendants do not dispute that the actions here, as alleged, arise in or under the Bankruptcy Code. With one exception,[7] they have not raised a question of the district

---

[7]The brief filed by United Community Bank ("UCB") in support of its motion to dismiss in Adversary No. 11-02026 states:

> UCB does not concede that withdrawing the order of reference is even a possibility in light of *Stern*; however, even if it were, it would be a futile act in this instance since the district court does not have subject matter jurisdiction or personal jurisdiction. This case does not involve a federal question and complete diversity does not exist (at least one defendant is a Texas citizen). Moreover, UCB is a Georgia bank and the alleged transactions occurred in Georgia. UCB had no contact with this forum and [any] claim brought in the district court will completely fail to satisfy the constitutional due process requirements of minimum contacts. Further, Section 544 confers no jurisdiction on any court; rather, it just preserves state law causes of action for the bankruptcy estate for a limited period of time. That state law cause of action has to be filed in the right court at the right time.

UCB's Brief at 6 n.1.

     As this argument by UCB is relegated to a footnote, the Court makes its response, albeit brief, in this footnote. The Court possesses subject matter jurisdiction because the plaintiff-trustee has brought suit under § 544, which, even though it incorporates state law, is still a federal statute, granting the district court federal subject matter jurisdiction. *See, e.g., Carlton v. Baww, Inc.*, 751 F.2d 781, 788 (5th Cir. 1985). The district court would likewise have jurisdiction over claims brought under §§ 547 and 548. In addition, given the subject matter of *Stern*—the Constitution—perhaps it is appropriate to point out that Article I, Section 8, Clause 4 of the Constitution specifically provides that Congress has the power to establish "uniform Laws on the subject of Bankruptcies throughout the United States." As for the issue of personal jurisdiction, Rule 7004(d) of the Federal Rules of Bankruptcy Procedure provides for nationwide service of process. The "forum" in a bankruptcy case or proceeding is the United States. *See In re Tribune Co.*, 418 B.R. 116 (Bankr. D. Del. 2009). UCB need only have sufficient contacts with the United States. *Id*. The Court assumes UCB was properly served and has contacts with the United States.

court's jurisdiction. The Court thus turns to the substantive arguments and issues before the
Court.

B.

1.

The important question here, as defendants contend, is whether dismissal is required
because, under *Stern*, "only an Article III judge in an Article III court can hear and finally
determine" the fraudulent transfer and preference claims made here by the plaintiff-trustee. Brief
of Greystone Servicing Corporation, Inc., Adv. No. 11-02014, Docket No. 7 at 6. The Court's
so-called jurisdiction over such claims, which are undeniably "core," is unconstitutional,
defendants argue. In addition, they submit that "this Court is not permitted to enter proposed
findings of fact and conclusions of law to the district court" on these claims because § 157(c)(1)
allows bankruptcy judges to submit proposed findings and conclusions in only non-core
proceedings. *Id*. at 16. Their argument, stripped to its essence, is that *Stern*, coupled with the
present statutory framework, leaves the Court with no choice but to dismiss these causes of
action. More to the point, defendants contend that *Stern* and the statute create a procedural
quandary that the Court is powerless to address; Congress alone can fix the problem.

2.

For purposes of its analysis, the Court assumes that its authority *to decide* the cases here is
unconstitutional under *Stern*. After all, these actions are core proceedings under the statute; the
defendants are not claims-filing creditors in the bankruptcy case; as in *Granfinanciera*, the
fraudulent transfer claims do not satisfy any of the "varied formulations" of the public rights

doctrine; and the preference claims, unlike *Katchen* and *Langencamp*, are not brought as part of

the claims reconciliation process, but, rather, to augment the bankruptcy estate. The Court

appreciates the quandary raised by *Stern*. Preference and fraudulent transfer actions are labeled as

core proceedings under § 157(b)(2)(F) and (H), respectively; they arise under or in the

Bankruptcy Code and thus satisfy *Stern*'s definition of a core proceeding. Even if they were not

"arising" matters, they certainly would be related to the bankruptcy case.[8] In either event, the

Court, at least arguably, cannot *decide* these suits because doing so would constitute an

unconstitutional exercise of authority improperly conferred on this Court, and all bankruptcy

courts, by Congress.

3.

The strict holding of *Stern*, as emphasized by Chief Justice Roberts, is that bankruptcy

courts lack the constitutional authority to enter a final judgment on a state-law counterclaim that

is not resolved in the process of ruling on a creditor/counter-party's proof of claim. From this, the

natural follow-up question is whether, in a *Stern*-like scenario—core but unconstitutional—the

bankruptcy court may hear the claim (but not decide it by entering a final judgment) and issue

proposed findings and conclusions. This assumes, as here, that the parties in light of *Stern*

affirmatively do *not* consent to final disposition by a bankruptcy judge. The insistence that

dismissal is required begs the same question. Dismissal here would be a harsh remedy. Subject

matter jurisdiction is not in question; accepting the pleaded facts as true, the causes of action here

are brought strictly in accordance with the statutory scheme. If, given *Stern*, the Court is required

to dismiss the cases here, it must also mean the Court cannot hear the cases and issue proposed

---

[8]*See infra* note 10.

findings and conclusions to the District Court.[9] The defendants' attack on the Court's ability to do

so is made on two levels. First, they submit that the statute, § 157, simply does not contemplate,

and thus does not allow, the Court to so handle the cases. Second, and most important, they

submit that even if the statute can be so construed, *Stern* (and, really, the import of *Stern*) does

not authorize such treatment. The second point, in effect, takes their reading of *Stern* to the most

dramatic and defining conclusion: the entire statutory framework of the bankruptcy system is

unconstitutional and unworkable. Simple logic dictates that if the Court cannot *hear* a statutorily

defined core proceeding, it certainly cannot *hear* a non-core proceeding.[10] The system breaks

down. So, can the Court hear and propose as opposed to hearing and deciding? The Court

disagrees with the defendants and concludes it can—on both levels.

C.

The Court first points out the obvious. Construing together subsections (b)(1) (court can

hear and decide core matters) and (c)(1) (court may merely hear related-to matters) of § 157, it

makes little sense to suggest that a bankruptcy judge has authority to hear a matter and issue

proposed findings of fact and conclusions of law on "related to" matters but does not have

authority to do the same with respect to "core" matters. Apart from any constitutional issue, a

matter that is "core," by definition, has a greater connection to a bankruptcy case than a matter

merely "related to" that same case. A sister court made the same point in addressing "statutorily

---

[9]In addition, it would mean that withdrawal of the reference by the District Court is not an option. Since defendants have not requested this, even as alternative relief, the Court assumes they do not concede that it is an option. *See supra* note 7.

[10]It would also presumably invalidate the consent mechanism, *supra* note 3, under which the bankruptcy judges, with consent, hear and decide non-core proceedings.

defined 'core' proceedings over which a bankruptcy court lacks constitutional authority to finally determine ":

> [I]t is absurd to think that simply because Congress did not anticipate the Supreme Court's ruling in *Stern* when it enacted, in 1984, 28 U.S.C. §§ 1334 (which vests jurisdiction over bankruptcy cases and proceedings in such cases in the district courts) and 157 (which permits the district court to refer bankruptcy cases and all proceedings "arising under title 11 or arising in or related to a case under title 11" to the bankruptcy courts) that the bankruptcy courts can now do nothing with respect to these types of claims. Since Congress expressly provided for the issuance of proposed findings of fact and conclusions of law with respect to "related to" proceedings over which the bankruptcy court had no authority to issue a final judgment except if the litigants expressly consented, there is no reason to believe that any impediment exists to this Court issuing proposed findings and conclusions to the district court with respect to core proceedings of the type that the *Stern* court has now concluded may not constitutionally be finally determined by a bankruptcy judge. If this Court issues proposed findings of fact and conclusions of law to the district court with respect to the Trustee's Count 2 and 3 claims, an Article III tribunal with jurisdiction over the Debtors' bankruptcy cases and all arising in, under and related to proceedings will actually decide the issues. *See* 28 U.S.C. §1334(a) and (b). That passes both Constitutional muster and facilitates the expeditious resolution of bankruptcy cases and proceedings.

*In re Soporex, Inc.*, Adv. No. 11-3306, 2011 WL 5911674, at *4 (Bankr. N.D. Tex. Nov. 28, 2011).

1.

An even more involved analysis of the statute reveals that its text does not bar the Court from issuing non-binding findings of fact and conclusions of law. Section 157(b)(1) provides as follows: "Bankruptcy judges *may* hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and *may* enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1) (emphasis added). Likewise, section 157(c)(1) provides:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge *shall* submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment *shall* be entered by the district judge after considering the

- 18 -

bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1) (emphasis added).

Defendants read these two sections in tandem to stand for the proposition that the Court is limited to *only* issuing final orders when hearing core matters, just as the Court is limited to *only* proposing findings and conclusions on related-to matters. They are correct on the latter point given § 157(c)(1)'s use of the word "shall." *See, e.g., Defenders of Wildlife v. United States EPA*, 450 F.3d 394, 399 n.4 (9th Cir. 2006) (Kozinski, J., dissenting) ([Under a statute] "'shall' means shall").

However, the text of § 157(b)(1) is flexible. It states that the bankruptcy courts *may* hear *and decide* bankruptcy cases (*the* bankruptcy cases) and core proceedings within such cases. *See Fogerty v. Fantasy Inc.*, 510 U.S. 517, 533, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994) ("The word 'may' clearly connotes discretion"). Unlike subsection (c)(1), which accords the bankruptcy court no discretion, the plain text of subsection (b)(1) does not bar the bankruptcy court from hearing the case and proposing findings and conclusions. Indeed, the mandatory language in § 157(c)(1), contrasted with the permissive language in subsection (b)(1), suggests that bankruptcy courts have discretion in deciding how to handle (b)(1) core proceedings as compared to (c)(1) related-to proceedings. *See Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("Congress' use of the permissive 'may' in [a statute's section] contrasts with the legislators' use of a mandatory 'shall' in the very same section."). This makes sense. Congress, reacting to *Northern Pipeline*, through use of the word "shall" in § 157(c)(1) ensured that bankruptcy courts would not have the power to finally determine cases that have less to do with the debtor and the bankruptcy process itself, i.e., cases that potentially implicate constitutional problems under Article III. *See N. Pipeline*

- 19 -

*Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 84-85 (1982). Congress did not intend for §
157 to prohibit bankruptcy courts from issuing non-binding findings of fact and conclusions of
law to a district court on core matters.

2.

Though defendants argue otherwise, *Stern* supports this Court issuing proposed findings
and conclusions. Defendants seize onto the portion of the *Stern* opinion that construes the statute
to mean a core matter cannot be a related-to matter. Defendants argue that this suggests that
*Stern* stands for the proposition that a bankruptcy court cannot treat a core matter like a related-
to matter, i.e., issue proposed findings and conclusions to the district court. Defendants fail to
appreciate the context of what the Supreme Court was actually addressing, however.

By clarifying that a core matter cannot be a related-to matter, the Supreme Court was
responding to Pierce's argument that "a bankruptcy judge may enter final judgment on a core
proceeding only if that proceeding also 'aris[es] in' a Title 11 case or 'aris[es] under' Title 11
itself." *Stern*, 131 S. Ct. at 2604. Pierce's argument "[supposed] that some core proceedings will
arise in a Title 11 case or under Title 11 and some will not." *Id*. at 2605. In other words, Pierce
was arguing that some "core" matters were not really core. The Supreme Court rejected this
reading of § 157, finding that "core" is modified by the "arising" language of the statute and that a
"core" proceeding cannot likewise be a "related to" proceeding. *Id*.[11] Nowhere in *Stern* does the

---

[11]As discussed *infra*, at subsection 2 of Part II-B, *Stern* clarified that the "arising under" and "arising in"
language of § 157(b)(1) defines a "core" proceeding under the statute. Subsection (b)(2) of § 157 contains the non-
exhaustive list of matters that are core proceedings, including at (C) counterclaims against claims-filing creditors,
which was at issue in *Stern*, and, at (F) and (H), respectively, preferences and fraudulent conveyances. The Court
recognizes the potential for debate on the question of whether each of the listed items under subsection (b)(2) meet the
Supreme Court's clarified definition of a core proceeding. The Court reads *Stern* to mean that all the listed matters at
(b)(2) satisfy the definition of a core proceeding, however. After all, Vickie's counterclaim was addressed by the
Supreme Court as a core proceeding and, immediately following its clarification of the meaning of a core proceeding,

Supreme Court suggest that a bankruptcy court is foreclosed from issuing proposed findings of fact and conclusions of law when hearing a core matter.

Given the Supreme Court's explanation in *Stern* that it could not "'rewrit[e]' the statute . . . to bypass the constitutional issue," *id.* (citing *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 841 (1986)), defendants argue that this Court would likewise be rewriting the statute by issuing proposed findings of fact and conclusions of law. But the Court is not rewriting the statute; the Court is merely interpreting it, given the discretionary language presented in § 157. *See supra*. The Supreme Court, in contrast, could not construe the statute to avoid the constitutional problem because the statute specifically authorizes bankruptcy judges to decide core matters.

*Stern* struck down § 157(b)(2)(C) as applied to the facts before it—the bankruptcy judge's decision to finally decide Vickie's state law counterclaim that did not merely resolve Pierce's proof of claim. The Supreme Court agreed with Vickie that "§ 157(b)(2)(C) [permitted] the bankruptcy court to enter a final judgment on her tortious interference counterclaim." *Id.* It determined, however, that there was no way to constitutionally construe the statute to permit its application given the nature of Vickie's claim. It was therefore forced to confront and decide the constitutional issue. *Id.* at 2608 ("Although we conclude that §157(b)(2)(C) permits the Bankruptcy Court to enter final judgment on Vickie's counterclaim, Article III of the Constitution

---

the *Stern* opinion says that it agrees with Pierce that "designating all counterclaims as 'core' proceedings raises serious constitutional concerns." *Id.* at 2605. Despite this, the Court acknowledges the argument that there may be certain matters within the list, like Vickie's state-law based action, that, when measured against the Supreme Court's definition of core proceeding, would be redefined as a "related to" proceeding. This argument would have to mean that the labeling of certain matters as core is simply invalid given the clarified definition. Whether core or related-to, Vickie's counterclaim raised the serious constitutional concern. It was the nature of the claim as a state-law based private right of action that created the problem, not its label. If it were re-labeled as a related-to proceeding, it would have still been improper for the bankruptcy court to have decided the case given Pierce's objection (or non-consent).

does not."). As argued by the defendants, *Stern* certainly calls into question the use of the core/non-core distinction as a means to determine whether the bankruptcy court can finally decide a case. It specifically does not, however, cast doubt on the bankruptcy court's ability, within the "division of labor" between the district court and the bankruptcy court, to hear a case. The major distinction here is that this Court has *not* decided the pending causes of action and, with *Stern* as its authority, may hear the causes of action and issue proposed findings and conclusions.

The procedural context of *Stern* further underscores this point. In *Stern*, the bankruptcy judge determined, and properly so under the statute, that he could adjudicate the matter through a final judgment. The consent mechanism applies to related-to matters, *see supra* note 3; the statute does not provide for consent in core proceedings. Pierce had no ability under the statute to *not* consent. The district court in *Stern* treated the bankruptcy judge's judgment as proposed and thus performed an independent review of the action. Neither the Ninth Circuit nor the Supreme Court said it was improper for the district court to have handled the case in such way. The problem with the district court's ruling was not that it chose to treat the bankruptcy judge's judgment as proposed, but, rather, that it failed to accord preclusive effect to the prior Texas probate court judgment. The *Stern* holding confirmed the district court's suspicion that the bankruptcy judge's final judgment implicated a serious constitutional issue.

3.

It is clear from *Stern* that this Court, as a bankruptcy court, is permitted to issue proposed findings and conclusions in lieu of a final order. Beyond its purposely limited holding, the Supreme Court emphasized that it was not making a major structural change to practice before the bankruptcy courts:

- 22 -

> Pierce has not argued that the bankruptcy courts "are barred from 'hearing' all counterclaims" or proposing findings of fact and conclusions of law on those matters, but rather that it must be the district court that "finally decide[s]" them. We do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree with the United States that the question presented here is a "narrow" one.

*Id.* at 2620 (internal citations omitted). Respondent's Brief (arguing Pierce's position), which the

Supreme Court refers to in the above passage, stated:

> Stern contends that denying bankruptcy courts the ability to decide counterclaims will "confound bankruptcy administration." Stern is incorrect. Adherence to the commands of Article III and the governing statutory text does not mean that bankruptcy courts are barred from "hearing" all counterclaims. On the contrary, it simply limits the bankruptcy courts' ability to finally decide a narrow category of pre-existing claims that arise under state law . . . . In contrast, for . . . state law counterclaims [such as those asserted against Pierce], the bankruptcy court may still "hear" such matters . . . but may not finally decide them. Instead, as noted, the court enters proposed findings of fact and conclusions of law subject to plenary de novo review in the Article III district court.

Brief for Respondent at 61-62, *Stern v. Marshall*, 131 S. Ct. 2594 (2011) (No. 10-179) 2010 WL

5125440 (internal citations omitted). The United States' amicus brief, also referenced, stated as

follows:

> [N]either the court of appeals nor respondent has questioned the constitutional authority of the federal *district* court to decide petitioner's state-law counterclaim as part of the bankruptcy case. The narrow constitutional question presented is whether Congress, consistent with Article III, could authorize the bankruptcy judge to enter final judgment on petitioner's counterclaim . . . rather than simply submitting proposed findings and conclusions to the district court.

Brief for United States as *Amicus Curiae* at 23, *Stern v. Marshall*, 131 S. Ct. 2594 (2011) (No.

10-179) 2010 WL 4717271.

The Supreme Court did not intend to strip the bankruptcy courts of their ability to enter

proposed findings of fact and conclusions of law in cases such as are before the Court here. The

Supreme Court found that matters like Vickie's claims, and arguably the plaintiff-trustee's claims

here, are core under § 157, but sufficiently implicate private rights over which bankruptcy courts cannot exercise "core jurisdiction." *Stern*, 131 S. Ct. at 2611. The concept of "core jurisdiction" broached by *Stern* is not a statutory one. Per *Stern*, § 157 is not a jurisdictional statute. *Id.* at 2607 ("Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. *See* § 157(b)(1), (c)(1). That allocation does not implicate questions of subject matter jurisdiction."). So, when the Supreme Court states that it is removing claims such as Vickie's "from core bankruptcy jurisdiction," it cannot mean that it is removing them from the bankruptcy court's ability to hear them. *See id*. at 2620. The term "core jurisdiction," as used by the Supreme Court, concerns the constitutional capacity of bankruptcy courts—not statutory jurisdiction—over an issue. The Supreme Court in *Stern*, interpreting the Constitution, sent a clear message that bankruptcy courts cannot finally decide matters that implicate the exercise of federal judicial power. But, as also emphasized by the Supreme Court, *Stern*, except "in one isolated respect," is not meant to rejigger the division of labor that is allocated as between the district courts and the bankruptcy judges. It does not foreclose the ability of this Court to issue proposed findings of fact and conclusions of law subject to *de novo* review by the District Court, an Article III court. *See Paloian v. Am. Express Co. (In re Canopy Fin., Inc.)*, No. 11-C-5360, 2011 U.S. Dist. LEXIS 99804, at *10-14 (N.D. Ill. Sept. 1, 2011); *Field v. Lindell (In re Mortgage Store, Inc.)*, No. 11-00439, 2011 U.S. Dist. LEXIS 123506, at *11-12 (D. Haw. Oct. 5, 2011); *In re Soporex, Inc.*, 2011 WL 5911674, at *4 (Bankr. N.D. Tex. Nov. 28, 2011). To the extent defendants here seek dismissal upon the authority of *Stern*, the Court will issue its orders denying such relief.

- 24 -

## ADDENDUM A

Adv. No. 11-02014 *WALTER O'CHESKEY, Liquidating Trustee, v. GREYSTONE SERVICING CORP., et al*

Adv. No. 11-02026 *WALTER O'CHESKEY, Liquidating Trustee, v. BLUE RIDGE LAW, LLC, et al*

Adv. No. 11-02034 *WALTER O'CHESKEY, Liquidating Trustee, v. MINERVA PARTNERS, LTD., et al*

Adv. No. 11-02038 *WALTER O'CHESKEY, Liquidating Trustee, v. G. WILLIAM LITTLE, et al*

Adv. No. 11-02041 *WALTER O'CHESKEY, Liquidating Trustee, v. INTERNATIONAL HOSPITAL CORP., et al*

Adv. No. 11-02045 *WALTER O'CHESKEY, Liquidating Trustee, v. MARTHA TEMPLETON, et al*

Adv. No. 11-02046 *WALTER O'CHESKEY, Liquidating Trustee, v. A&R MECHANICAL SERVICES, INC., et al*

Adv. No. 11-02067 *WALTER O'CHESKEY, Liquidating Trustee, v. LUBBOCK ABSTRACT & TITLE CO., et al*

Adv. No. 11-02089 *WALTER O'CHESKEY, Liquidating Trustee, v. PHILLIP AND CAROL WOLFE ENTERPRISES, LTD., et al*

Adv. No. 11-02090 *WALTER O'CHESKEY, Liquidating Trustee, v. JET SUPPORT SERVICES, INC., et al*

Adv. No. 11-02111 *WALTER O'CHESKEY, Liquidating Trustee, v. SOAK CREEK PARTNERS, L.P., et al*

Adv. No. 11-02115 *WALTER O'CHESKEY, Liquidating Trustee, v. MM MILLENNIUM TRUST FG, et al*

Adv. No. 11-02116 *WALTER O'CHESKEY, Liquidating Trustee, v. WILLIAM C. DUNLAP, JR., et al*

Adv. No. 11-02126 *WALTER O'CHESKEY, Liquidating Trustee, v. CARSON BURGESS, et al*

Adv. No. 11-02127 *WALTER O'CHESKEY, Liquidating Trustee, v. CAMPBELL BURGESS*, et al

Adv. No. 11-02128 *WALTER O'CHESKEY, Liquidating Trustee, v. HERRING FINANCIAL SERVICES, et al*

Adv. No. 11-02130 *WALTER O'CHESKEY, Liquidating Trustee, v. HERRING NATIONAL BANK, et al*

Adv. No. 11-02131 *WALTER O'CHESKEY, Liquidating Trustee, v. WILLIAM SCOTT, et al*

Adv. No. 11-02132 *WALTER O'CHESKEY, Liquidating Trustee, v. RAINIER AMERICAN INVESTORS I, LLC, et al*

Adv. No. 11-02133 *WALTER O'CHESKEY, Liquidating Trustee, v. DON STORSETH, et al*

### End of Memorandum Opinion###